02-11-155-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00155-CV

 

 


 
 
 Security National Insurance Company
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Duncan Murrell
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

FROM THE 17th
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

          This
is an appeal from a worker’s compensation case in which a jury found that
Appellee Duncan Murrell was not intoxicated when he fell through a roof on a
jobsite and sustained injuries.  Appellant Security National Insurance Company
argues in four issues that (1) the judgment, which concludes that Murrell was
not intoxicated at the time of his injury, is not supported by legally
sufficient evidence; (2) the definition of “intoxication” submitted to the jury
was incomplete and failed to track the statutory definition; (3) the judgment,
which concludes that Murrell had disability, should be reversed; and (4) the
judgment, which awards fee shifted attorneys’ fees, should be reversed.  We
will affirm.

II.  Factual
and Procedural Background

          Warnick
Metal Building Erector employed Murrell to construct an aluminum roof on a
warehouse in Mansfield where airplane parts would be built.  Security National
insured Warnick for workers’ compensation claims.  Prior to beginning his
employment with Warnick and one month before he was injured, Murrell provided a
urinalysis.  The urinalysis was negative for drugs. 

          On
Friday evening, October 5, 2007, after he received his first paycheck, Murrell testified
that he relaxed in his backyard with his cousin, smoked a marijuana joint that
his cousin had brought him, and drank a beer.  Murrell said that the months
prior to that had been stressful because he had been unemployed and had five children
to take care of.

          Three
days later, on the morning of Monday, October 8, 2007, Murrell woke up at 4:30
a.m. and walked a mile to his carpool, which then took fifteen to twenty
minutes to reach Warnick’s headquarters.  Murrell sat through a ten- to
fifteen-minute safety meeting and then rode thirty to forty-five minutes to the
jobsite.  After arriving at the jobsite, Murrell laid out all the tools, made
sure everything was ready for the roof to be installed, and put on his
H-harness and his hard hat.  Murrell testified that it had rained over the
weekend and was misting that morning, causing the sheet metal to be “dewy and
real slippery.”

          Murrell
was working with a partner, carrying the sheet metal, approximately forty feet
in the air.  After he had been working for about three hours, his foot slipped
out from under him, and he could not grab anything.[2]
 He recalled “falling real slow,” trying to break his fall, and “hitting the
ground real hard.”  He landed in a sitting position and broke his pelvis in
half, broke four lumbar discs in his back, shattered his ankle, flattened his
heel, and shattered both wrists.  Murrell was taken by CareFlite to Harris Methodist
Hospital.

          Murrell
was in the hospital for a month.  He was on a ventilator to help him breathe
because his body had shut down.  Murrell did not recall having a urinalysis
because he “didn’t wake up for a week and a half, two weeks.”  The urine drug
screen, which was taken on October 8, 2007, at 11:30 a.m. at the hospital,
revealed the presence of cannabinoids, which are metabolites of marijuana.  Tony
Edwards worked with Murrell from 6:00 until 10:30 a.m. when Murrell was injured
and said that Murrell appeared normal the whole time.  Another Warnick
employee, David Alexander Bonner, testified that he did not see any problems
with Murrell on October 8, 2007, and that he believed that Murrell fell because
he was “just trying to do too much at one time, just trying to hustle.”

          By
the time of the trial, Murrell had lost three of the toes on his left foot and continued
to receive medical treatment for osteomyelitis in his left foot.  Amputation of
his left foot was a possibility because osteomyelitis had returned in the heel
of his foot.  Additionally, Murrell could not bend his left hand because he had
no wrist; his right wrist only bent down, not up.  Murrell also could not bend
the lower part of his back. 

          Based
on the positive urine drug screen, Security National denied compensability, and
Murrell invoked administrative remedies.  At the Contested Case Hearing (CCH) on
June 5, 2008, the parties presented evidence on the issue of intoxication, as
well as testimony recounting the events on the day Murrell was injured.  The
CCH officer determined that Murrell had sustained a compensable injury and was
not intoxicated at the time of his injury.  Security National appealed the
decision to the Texas Workers’ Compensation Commission (TWCC) Appeals Panel, which
affirmed the decision of the CCH officer by operation of law.  Security National
then sought judicial review. 

          The
trial court granted Murrell a partial summary judgment against Security
National on the disability issue, finding that Murrell had “disability as a
result of his injury sustained at work on October 8, 2007, beginning on October
9, 2007 and continuing through the date of the CCH (June 5, 2008).”  The issue
of intoxication was tried to a jury, which found that Murrell was not
intoxicated from a controlled substance at the time his injury occurred on
October 8, 2007.  This appeal followed.

III.  Legally Sufficient Evidence Supports Jury’s Finding of No Intoxication

          In
its first issue, Security National argues that the evidence is legally
insufficient to support the judgment that Murrell was not intoxicated at the
time of his injury.  In support of its contention, Security National argues
that the trial court failed to apply the intoxication presumption.

A. 
Standard of Review

          We
may sustain a legal sufficiency challenge only when (1) the record discloses a
complete absence of evidence of a vital fact; (2) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact; (3) the evidence offered to prove a vital fact is no more than a
mere scintilla; or (4) the evidence establishes conclusively the opposite of a
vital fact.  Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334
(Tex. 1998), cert. denied, 526 U.S. 1040 (1999); Robert W. Calvert, “No
Evidence” and “Insufficient Evidence” Points of Error, 38 Tex. L. Rev. 361,
362–63 (1960).  In determining whether there is legally sufficient evidence to
support the finding under review, we must consider evidence favorable to the
finding if a reasonable factfinder could and disregard evidence contrary to the
finding unless a reasonable factfinder could not.  Cent. Ready Mix Concrete
Co. v. Islas, 228 S.W.3d 649, 651 (Tex. 2007); City of Keller v. Wilson,
168 S.W.3d 802, 807, 827 (Tex. 2005).

          Anything
more than a scintilla of evidence is legally sufficient to support the
finding.  Cont’l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex.
1996); Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex. 1996).  When the
evidence offered to prove a vital fact is so weak as to do no more than create
a mere surmise or suspicion of its existence, the evidence is no more than a
scintilla and, in legal effect, is no evidence.  Kindred v. Con/Chem, Inc.,
650 S.W.2d 61, 63 (Tex. 1983).  More than a scintilla of evidence exists if the
evidence furnishes some reasonable basis for differing conclusions by
reasonable minds about the existence of a vital fact.  Rocor Int’l, Inc. v.
Nat’l Union Fire Ins. Co., 77 S.W.3d 253, 262 (Tex. 2002). 

B.  Workers’ Compensation Act Appeals

          The
Texas Supreme Court has held that a TWCC Appeals Panel’s final decision may be
appealed to the courts under a “modified de novo review.”  Tex. Workers’
Comp. Comm’n v. Garcia, 893 S.W.2d 504, 530 (Tex. 1995).  Under this
modified de novo review, all issues regarding compensability of the injury may
be tried by the jury or court.  Id. at 528; see Tex. Lab. Code
Ann. §§ 410.301, .304 (West 2006).  Modified de novo review means:  (1)
the trial court is informed of the TWCC Appeals Panel’s decision, (2) evidence
of the extent of impairment is limited to that presented to the TWCC, unless
the court makes a threshold finding that the claimant’s condition has substantially
changed, and (3) the court is required to adopt the specific impairment rating
arrived at by one of the physicians in the case.  Tex. Lab. Code Ann. §§
410.304, .306 (West Supp. 2011), .307; Garcia, 893 S.W.2d at 528.  The
court, although informed of the TWCC’s decision, is not required to accord it
any particular weight.  Garcia, 893 S.W.2d at 515.  The factfinder does
not review the TWCC Appeals Panel’s decision for “reasonableness” but rather
independently decides the issues by a preponderance of the evidence.  Id.
at 531.  The party appealing the TWCC Appeals Panel’s ruling bears the burden
of proof by a preponderance of the evidence. Tex. Lab. Code Ann. § 410.303
(West 2006).  Because Security National’s claim was denied at the administrative
level, it had the burden of proving by a preponderance of the evidence that Murrell
was intoxicated at the time of his fall.  See id.

C. 
Intoxication

          The
workers’ compensation laws prohibit the recovery of compensation where, at the
time of injury, an employee is intoxicated.  Id. § 406.032(1)(A) (West
2006).

          “Intoxication”
means the state of

(1) having an alcohol
concentration to qualify as intoxicated under Section 49.01(2), Penal Code; or

 

(2) not having the
normal use of mental or physical faculties resulting from the voluntary
introduction into the body of:

 

(A) an alcoholic
beverage, as defined by Section 1.04, Alcoholic    Beverage Code; [or]

 

(B) a controlled
substance or controlled substance analogue, as defined by Section 481.002,
Health and Safety Code.

Id. §
401.013(a) (West 2006).  Marijuana is a controlled substance included under
section 481.002 of the health and safety code.  Tex. Health & Safety Code
Ann. § 481.002 (West 2010).

          In
cases involving controlled substances, there is no level or test defined by the
statute that establishes per se if a person has lost use of his physical and
mental faculties.  Am. Interstate Ins. Co. v. Hinson, 172 S.W.3d 108,
115 (Tex. App.—Beaumont 2005, pet. denied).  The statutory standard for marijuana
is relatively subjective.  See id.; see also Tex. Lab. Code Ann.
§ 401.013(a)(2).

D. 
Rebuttable Presumption

          The
Texas Labor Code includes a rebuttable presumption that states:  “On the
voluntary introduction into the body of any substance listed under Subsection
(a)(2)(B), based on a blood test or urinalysis, it is a rebuttable presumption
that a person is intoxicated and does not have the normal use of mental or
physical faculties.”  Tex. Lab. Code Ann. § 401.013(c).  In enacting the
amendment that created section 401.013(c) in 2005, the Texas Legislature
codified former case law.  See Tex. Workers’ Comp. Comm’n, Appeal No.
032618, 2003 WL 23011731, at *1 (Nov. 19, 2003) (stating that an employee is
presumed sober at time of injury, but when carrier rebuts presumption of
sobriety with probative evidence of intoxication, burden shifts to employee to
prove he was not intoxicated at time of injury); Tex. Workers’ Comp. Comm’n,
Appeal No. 021751, 2002 WL 31115380, at *1 (Aug. 26, 2002) (same); see also
Tex. Workers’ Comp. Comm’n, Appeal No. 012208, 2001 WL 1472150, at *1 (Oct. 23,
2001) (stating that a positive test for controlled substance will generally
shift burden to claimant to prove he was not intoxicated at time of injury).

          The
trial court, however, declined to apply this rebuttable presumption.  Moreover,
when the trial court defined “intoxication” in the jury charge, it did not
include the presumption of intoxication, and Security National complains of
this exclusion in its second issue.  Security National orally objected to the
charge, but it did not submit a proposed correct definition in writing.  Texas
Rule of Civil Procedure 278 states in pertinent part, “Failure to submit a
definition or instruction shall not be deemed a ground for reversal of the
judgment unless a substantially correct definition or instruction has been
requested in writing and tendered by the party complaining of the judgment.”  Tex.
R. Civ. P. 278; accord Transcon. Ins. Co. v. Crump, 330 S.W.3d 211, 226
(Tex. 2010) (holding that because Transcontinental’s definition included the
critical but-for component, and was otherwise a correct statement of law, it
was “substantially correct” and sufficed to preserve its complaint of charge
error on appeal).  Because Security National did not present a proposed correct
definition in writing, it waived the error, if any, in the trial court’s
failure to instruct the jury on the rebuttable presumption regarding
intoxication.  See Tex. R. Civ. P. 278; Bayer Corp. v. DX Terminals,
Ltd., 214 S.W.3d 586, 603 (Tex. App.—Houston [14th Dist.] 2006, pet.
denied) (holding that oral statements regarding the addition of instructions to
the charge failed to preserve error).  We therefore overrule Security
National’s second issue.

E.  Jury
Charge

          Absent
an objection to the jury charge, the sufficiency of the evidence is reviewed in
light of the charge submitted.  Wal-Mart Stores, Inc. v. Sturges, 52
S.W.3d 711, 715 (Tex. 2001); City of Fort Worth v. Zimlich, 29 S.W.3d
62, 71 (Tex. 2000).  

          The
court’s charge included the following definition and instructions:

          “Intoxication”
means not having the normal use of mental or physical faculties resulting from
the voluntary introduction into the body of a controlled substance.

 

          You are
instructed that the Texas Department of Insurance, Division of Workers’
Compensation determined that the claimant was not intoxicated at the time of
his injury.

 

          You are
further instructed that marijuana is a controlled substance.  

The
sole question presented to the jury was “Do you find that Duncan W. Murrell was
intoxicated from a controlled substance at the time his injury occurred on
October 8, 2007?”  The jury answered, “No.”  Security National contends that
the evidence is legally insufficient to support the jury’s finding that Murrell
was not intoxicated at the time his injury occurred on October 8, 2007.

F. 
Evidence at Trial

          Security
National’s evidence consisted of the positive urine test and an expert, Dr. James
Kelaher, who testified that based on the urine test, Murrell was intoxicated at
the time of the accident.

          To
controvert that evidence, Murrell presented the videotaped deposition of a
special TWCC examiner in industrial toxicology cases, Dr. Stevan Cordas, who
testified that Murrell was not intoxicated at the time of the accident based on
the results of the urine test showing metabolites of marijuana.  Dr.
Cordas explained that marijuana is first converted into a psychoactive
substance that causes mood changes and other physical and endocrine changes
that “are pretty much dissipated” after six hours, and then the marijuana
converts to a psychoactively inactive substance, meaning that it does not have
any influence on the physical or mental body and is inert.  Dr. Cordas
explained that most “of what we measure in the urine is a[n] inert metabolite
after the first two days.”  The screening test done at the hospital did not
measure intoxication; it measured exposure.  Thus, the lab results revealed
that Murrell tested positive for opiates because he was given them for his pain
and that he tested positive for cannabinoids (a metabolite of marijuana),
showing that he had been exposed to and had used marijuana in the past.  Even
though the lab report showed a qualitative amount of cannabinoids—fifty
nanograms—Dr. Cordas testified that Murrell was not intoxicated based on those
results because the test was measuring an inactive metabolite to screen the
potential for Murrell’s having used marijuana.  Dr.
Cordas therefore could not say within a reasonable medical probability that
Murrell was intoxicated based solely on the hospital’s urine drug analysis
screen, and there was not a confirmatory test in this case.[3]

          Murrell
testified that he had smoked “just the one joint” three days prior to the fall
from the roof; he did not smoke any marijuana on October 6, 7, or 8.  He
described everything that he did on the morning of the fall, which included
waking at 4:30 a.m., walking a mile to the carpool, riding with a co-worker to
the Warnick headquarters, sitting through a safety meeting, riding with a
co-worker to the jobsite, laying out all the tools, making sure that everything
was ready for the roof to be installed, and putting on his H-harness and his
hard hat.  Two of Warnick’s employees testified that Murrell did not appear to
be intoxicated on October 8, 2007.

          We
conclude that a reasonable factfinder could conclude that Murrell was not
intoxicated at the time of his injury as set forth in the jury charge given. 
The scientific and expert evidence introduced during the trial in this case is
not conclusive as a matter of law that Murrell was intoxicated from a
controlled substance at the time his injury occurred on October 8, 2007. 
Murrell rebutted the presumption of intoxication to the satisfaction of the CCH
officer and the TWCC Appeals Panel, and the jury found in his favor as well. 
We hold that the evidence is legally sufficient to support the jury’s finding
that Murrell was not intoxicated from a controlled substance at the time his
injury occurred on October 8, 2007.  See Tex. Lab. Code Ann. §
401.013(a)(2)(B); Tex. Mut. Ins. Co. v. Havard, No. 01-07-00268-CV,
2008 WL 598347, at *4 (Tex. App.—Houston [1st Dist.] Mar. 6, 2008, no pet.)
(mem. op.) (holding that evidence was legally sufficient to support trial
court’s finding that employee rebutted presumption of intoxication after
urinalysis showed presence of cocaine).  We overrule Security National’s first
issue.

IV.  Conclusion

          Having
held that the jury’s finding is supported by legally sufficient evidence and
that any jury charge error was not preserved, we need not reach Security National’s
third and fourth issues, and we affirm the trial court’s judgment.

 

 

SUE WALKER
JUSTICE

 

PANEL: 
DAUPHINOT, GARDNER, and WALKER, JJ.

 

DELIVERED:  August 2, 2012








 









[1]See Tex. R. App. P. 47.4.





[2]Murrell said that since he
and the crew were “trying to kill two birds with one stone,” he made the
mistake of going up on the roof while the safety line was being tied on, which
prevented the H-harness from being able to protect him.  The supervisor was making
efforts to get the cinder blocks tied down from one end of the building to the
other so that the employees could hook to it and walk along without falling
through the opening, but none of the workers were tied down.





[3]The urine drug screen
(UDS) report from the hospital states, “If confirmation of positive UDS results
is desired, the clinical laboratory must be notified within 24 hours to ensure
an appropriate sample can be sent to a reference laboratory for confirmatory
testing by another method (e.g., GC/MS; HPLC; etc.).”