Opinion issued August 6, 2020



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00668-CV

_____

**NORTHWEST EMS CONSULTANTS, P.A. D/B/A NORTH CYPRESS EMS, Appellant**

**V.**

**FRANCES GUILLORY, Appellee**

---

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-61162**

---

## DISSENTING OPINION

In this healthcare liability suit, Northwest EMS Consultants, P.A. appeals from the trial court's ruling denying its challenges to Frances Guillory's expert reports. The majority reverses and remands, holding that:

(1) Guillory's expert reports do not provide a fair summary of the standard of care or explain how Northwest EMS breached this standard;

(2) Guillory's experts are not qualified to opine about causation; and

(3) Guillory's expert reports do not explain the causal relationship between Northwest EMS's breach of the standard of care and her injuries.

These holdings misapply the Texas Medical Liability Act's expert-report requirement to the facts of this case. I would affirm the trial court, and I therefore respectfully dissent.

## BACKGROUND

Guillory sued Northwest EMS for injuries she suffered when its technicians dropped her to the ground while removing her from an ambulance on a stretcher. In support of her healthcare liability claim, Guillory served two expert reports.

The first was from Jeffrey P. Jannarone, a licensed emergency medical technician, who opined about the standard of care. In his report, Jannarone stated that the technicians who carried Guillory on a stretcher were required to properly unload her from the ambulance. According to Jannarone, proper unloading includes not dropping the patient. But the technicians did drop Guillory.

Guillory's second report was from Kevin Anuvat, a licensed medical doctor, who opined about causation. In his report, Dr. Anuvat stated that Guillory developed pain in her neck and back after being dropped on the ground and that she was later

2

diagnosed with spinal injuries. Anuvat concluded that these injuries resulted from the drop because:

- she was 41 years old, healthy, and had no history of trauma or musculoskeletal pain complaints or symptoms before being dropped; and

- based on two studies and Guillory's age, her injuries were not within reasonable medical probability attributable to the normal aging process.

Northwest EMS challenged the sufficiency of both reports. The trial court overruled Northwest EMS's challenges. Northwest EMS appeals.

## DISCUSSION

### Expert-Report Requirement

A plaintiff who asserts a healthcare liability claim must serve one or more supporting expert reports on a healthcare provider defendant that she sues no later than 120 days after the defendant answers. TEX. CIV. PRAC. & REM. CODE § 74.351(a), (i). An expert report must give a fair summary of the expert's opinions as to the applicable standard of care, the manner in which the healthcare provider failed to meet the standard, and the causal relationship between the healthcare provider's failure and the plaintiff's injury, harm, or damages. *Id.* § 74.351(r)(6).

The purpose of the expert-report requirement is to eliminate frivolous claims at a suit's threshold. *Baylor Scott & White, Hillcrest Med. Ctr. v. Weems*, 575 S.W.3d 357, 363 (Tex. 2019). Congruent with this limited purpose, the statute sets a

relatively low bar for the sufficiency of an expert report. *New Med. Horizons v. Milner*, 575 S.W.3d 53, 60 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

A healthcare provider defendant must object to a report's sufficiency within 21 days of the service of the report or the filing of the healthcare provider defendant's answer, whichever is later. TEX. CIV. PRAC. & REM. CODE § 74.351(a). Otherwise, the defendant waives any objections to the report's sufficiency. *Id.*

The trial court may sustain an objection to an expert report's sufficiency "only if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the definition of an expert report in Subsection (r)(6)." *Id.* § 74.351(*l*). An expert report meets this good-faith standard so long as it informs the defendant of the specific conduct called into question and gives the trial court a basis to conclude the claim has merit. *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018) (per curiam). The report need not use particular magic language. *Columbia Valley Healthcare Sys. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017). Nor does the report need to marshal proof in support of the plaintiff's claim. *Abshire*, 563 S.W.3d at 223–24. But it cannot be conclusory. *Id.*

### Standard of Review

We review a trial court's ruling on a challenge to an expert report's sufficiency for abuse of discretion. *Id.* at 223. The trial court abuses its discretion if it rules without reference to guiding rules or principles. *Miller v. JSC Lake Highlands*

4

*Operations*, 536 S.W.3d 510, 512–13 (Tex. 2017) (per curiam). Under this standard, we may not substitute our judgment for the trial court's. *Id.* at 513. If facts are in dispute, the trial court does not abuse its discretion if some of the conflicting evidence supports its ruling. *See Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011). When presented with a close call, we must affirm. *Milner*, 575 S.W.3d at 60.

## Analysis

### *Standard of Care*

To fulfill the expert-report requirement as to standard of care, the report must explain what the healthcare provider defendant should have done under the circumstances and what it did instead. *Am. Transitional Care Ctrs. of Tex. v. Palacios*, 46 S.W.3d 873, 880 (Tex. 2001); *Puppala v. Perry*, 564 S.W.3d 190, 196 (Tex. App.—Houston [1st Dist.] 2018, no pet.). A fair summary must notify the defendant of the complained of conduct but need not make a full statement of the standard of care and how it was breached. *Palacios*, 46 S.W.3d at 880.

Jannarone's report satisfies these requirements. He opined that emergency medical technicians should not drop a patient when carrying her on a stretcher but that this is exactly what they did when carrying Guillory. His report notifies Northwest EMS what it should have done under the circumstances (not drop Guillory) and what it did instead (drop Guillory).

5

The majority faults Jannarone for failing to specify what Northwest EMS's technicians did or did not do that caused them to drop Guillory. Without these details, the majority reasons, Jannarone's report is conclusory. I cannot agree.

In *Baty v. Futrell*, the plaintiff sued an anesthetist who inserted a needle in her optic nerve while anesthetizing her before cataract surgery. 543 S.W.3d 689, 690 (Tex. 2018). In his report, the plaintiff's expert opined that the anesthetist violated the standard of care by failing to administer the anesthesia in the proper manner to avoid injuring the patient's optic nerve. *See id.* at 691, 694. The anesthetist objected that the expert report did not provide a fair summary of the standard of care or explain how the anesthetist breached it. *See id.* at 692. In particular, the anesthetist asserted that faulting him for not administering anesthesia in the proper manner was impermissibly conclusory. *See id.* at 694. Instead, the anesthetist argued, the plaintiff's expert had to specify the duties of an ordinarily prudent anesthetist performing this procedure and explain what the anesthetist should have done differently in this instance. *Id.* at 696. The trial court agreed with the anesthetist and dismissed the plaintiff's suit. *Id.* at 692. The court of appeals affirmed, holding that the report did not inform the anesthetist what an ordinarily prudent anesthetist should have done under the circumstances. *Id.* at 692, 695.

In the Supreme Court, the plaintiff contended that her expert report was not conclusory even though it articulated a "fairly basic" standard of care—not inserting

6

a needle into the optic nerve when administering anesthesia. *Id.* at 694. The Supreme Court agreed with the plaintiff, holding that her expert report was sufficient. *Id.* at 695–97. The Court reasoned that the plaintiff's expert did not conclusorily state that he knew the standard of care and assert that the anesthetist did not meet it. *Id.* at 696. Nor did the expert merely equate negligence with a bad or unsuccessful result. *Id.* Rather, the Court explained, insertion of "the needle into the optic nerve is not a result, good or bad; it is conduct that allegedly caused a bad result in this case." *Id.* It was this very conduct—insertion of the needle into the optic nerve—that the plaintiff's expert identified as a breach of the standard of care. *Id.* The Court held that the expert's report therefore was sufficient because it informed the anesthetist exactly what he was not supposed to have done. *Id.* at 697.

Jannarone's report is analogous to the one the Court held was sufficient in *Baty*. Like an anesthetist's insertion of a needle into the optic nerve when anesthetizing a patient before cataract surgery, the emergency medical technicians' dropping Guillory on the ground when carrying her on a stretcher is not a result, good or bad; it is conduct that allegedly injured Guillory, and dropping her is the specific conduct that her expert asserts violated the technicians' standard of care. Jannarone did not opine that Northwest EMS was negligent merely because Guillory was injured while being carried. Rather, Jannarone's report informed Northwest EMS exactly what it was not supposed to have done—drop Guillory. As in *Baty*, no

7

further detail is required at this stage of the proceedings. *See* 543 S.W.3d at 697; *see also Cook v. Broussard*, No. 01-19-00483-CV, 2020 WL 1917841, at *7 (Tex. App.—Houston [1st Dist.] Apr. 21, 2020, no pet.) (mem. op.) (report opining that standard of care required doctor to maintain control of surgical instrumentation and that failure to do so breached standard held sufficient).

Not all healthcare liability claims involve a complex standard of care. *Keepers v. Blessett*, No. 01-18-01020-CV, 2019 WL 1523368, at *5 (Tex. App.—Houston [1st Dist.] Apr. 9, 2019, no pet.) (mem. op.) (citing *Baty*, 543 S.W.3d at 694). When a plaintiff's claim does not involve a complex standard of care, her expert's articulation of the standard and its breach may be fairly basic and still satisfy the report requirement. *See id.* at *6 (report opining that epidural injection should not have penetrated dura, spinal cord, or intradural space held sufficient). Guillory's claim that emergency medical technicians dropped her on the ground when carrying her on a stretcher is as simple as a healthcare liability claim can be. The simplicity of Jannarone's expert report reflects the simplicity of the claim.

The majority nonetheless holds that more detail is required. It apparently envisions a report in which an expert opines on topics like the proper method of gripping a stretcher, appropriate gait while carrying it, suitable measures to spot and avoid hazards when in motion, acceptable precautions to minimize the risk of dropping the patient, and any conventional means of mitigating injury in the event

8

of a drop. But this kind of elaboration is not necessary for an uncomplicated claim like Guillory's. *See Abshire*, 563 S.W.3d at 227 (report opining that hospital would have detected and treated patient's spinal fracture sooner if nurses had properly documented patient's medical history and symptoms was not conclusory for failure to designate specific documentary procedure that should have been used).

Nor is the kind of elaboration that the majority requires appropriate. Expert testimony consists of scientific, technical, or other specialized knowledge beyond the ken of laymen. *See* TEX. R. EVID. 702; *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000) (per curiam). How to hold an object and guard against dropping it while walking are matters within the common knowledge of laymen. The trial court therefore does not need expert assistance on these subjects to assess whether Guillory's healthcare liability claim has merit at the threshold of the suit. By insisting that Jannarone opine on these matters of common knowledge for his report to represent a good-faith effort to comply with the expert-report requirement, the majority effectively mandates that he proffer pseudo-science. This stands our jurisprudence, which aims to exclude "junk science," on its head. *See E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 552–57 (Tex. 1995).

### *Causation*

To fulfill the expert-report requirement as to causation, the report must explain how and why the healthcare provider defendant's alleged negligence caused

9

the plaintiff's injury. *Abshire*, 563 S.W.3d at 224. To do so, the report must explain the basis for its statements and link its conclusions to specific facts. *Id.* But the report need not account for every known fact. *Id.* It is sufficient so long as it makes a good-faith effort to explain how the plaintiff will prove proximate cause. *Id.*

The majority holds that Dr. Anuvat's causation opinion would be insufficient even if he was qualified to opine on the subject of causation. I cannot agree.

The majority essentially faults Anuvat for concluding that the emergency medical technicians caused Guillory's injuries by dropping her to the ground simply because her symptoms appeared afterward. But Anuvat did not rely on the sequence of these events or the temporal proximity of the drop and Guillory's symptoms alone. Anuvat used a process of elimination to conclude that the drop caused Guillory's injuries. She did not have any symptoms before the technicians dropped her that might indicate a preexisting medical condition. Nor did she have any prior trauma that would account for her injuries. Studies indicate it was more likely than not that a person her age would not have developed these injuries without trauma. Anuvat's conclusion rests on these specific facts. His opinion thus informs Northwest EMS how and why the drop allegedly caused Guillory's injuries.

The process of elimination Anuvat used is a form of differential diagnosis, the clinical process by which a doctor determines the cause of a patient's symptoms by ruling out other possible causes. *See Transcont'l Ins. Co. v. Crump*, 330 S.W.3d 211,

10

216–20 (Tex. 2010); *Coastal Tankships, U.S.A. v. Anderson*, 87 S.W.3d 591, 604–05 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (en banc). A medical expert can render a scientifically reliable opinion on causation based on this process of elimination. *See Crump*, 330 S.W.3d at 216–19; *see also Coastal Tankships*, 87 S.W.3d at 604 (differential diagnosis is not "junk science"). To do so, the expert need not disprove every possible cause other than the one he espouses. *Crump*, 330 S.W.3d at 217–18; *Curnel v. Houston Methodist Hosp.-Willowbrook*, 562 S.W.3d 553, 562 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Guillory's causation expert ultimately may need to consider any alternative causes raised by the evidence to render a reliable opinion. *See Crump*, 330 S.W.3d at 217–18. But at this early stage of the proceedings, Anuvat's deductive process provides some basis to conclude that dropping Guillory to the ground caused her injuries. Some basis is all that is necessary to satisfy the expert-report requirement. *Cornejo v. Hilgers*, 446 S.W.3d 113, 123 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

### *Qualifications*

To submit a report on causation, the witness must be a physician who is qualified to render an expert opinion under the rules of evidence. *See* TEX. CIV. PRAC. & REM. CODE §§ 74.351(r)(5)(C), 74.403(a). Thus, a physician may be qualified on the basis of knowledge, skill, experience, training, or education. TEX. R. EVID. 702; *Puppala*, 564 S.W.3d at 202. While not all physicians are qualified to

11

opine on all medical questions, a physician is not required to practice or specialize in a particular area to opine on causation. *Cornejo*, 446 S.W.3d at 121–23.

The majority holds that Anuvat, a licensed medical doctor, is not qualified to opine that emergency medical technicians injured Guillory by dropping her. It reasons that Anuvat's report does not show that his particular field of practice—physiatry—qualifies him to opine on the cause of spinal injuries. I cannot agree.

Anuvat is a licensed medical doctor in Texas. The majority concedes that as a physiatrist, Anuvat diagnoses and treats medical conditions that may cause impairment. It fails to recognize, however, that diagnosis may include not only the identification of an ailment but its underlying causes as well. *See, e.g.*, *Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 248 n.3 (Tex. App.—San Antonio 2004, no pet.) (relying on TABER'S CYCLOPEDIC MED. DICTIONARY (19th ed. 2001)).

Anuvat used differential diagnosis or its equivalent to conclude that dropping Guillory injured her. As noted, treating physicians routinely use this diagnostic methodology. *See Crump*, 330 S.W.3d at 216; *Coastal Tankships*, 87 S.W.3d at 604. Specialized medical expertise is not required to use this methodology to evaluate a patient because it is common to the practice of internal medicine in general. *See Crump*, 330 S.W.3d at 217 (differential diagnosis is basic method of internal medicine and enjoys widespread acceptance in medical community). To the extent

the majority holds that Anuvat must demonstrate expertise in spinal injuries in particular to qualify as an expert, it therefore errs. Virtually any medical doctor is qualified to opine that a patient's musculoskeletal injuries were caused by sudden trauma like a drop or fall. *See, e.g.*, *Clear Lake Rehab. Hosp. v. Karber*, No. 01-09-0883-CV, 2010 WL 987758, at *4–5 (Tex. App.—Houston [1st Dist.] Mar. 18, 2010, no pet.) (mem. op.) (trial court did not abuse discretion in ruling that physician with surgical practice was qualified to opine that allowing patient to place weight on leg caused her fall and fracture); *see also Kerr v. Pirf Operations*, No. 05-18-00928-CV, 2019 WL 4027075, at *1–2, *7 n.6 (Tex. App.—Dallas Aug. 27, 2019, pet. denied) (mem. op.) (concluding that patient's fall in rehabilitation facility's shower due to inadequate monitoring and assistance and her resulting spinal injuries, which included injury to her spine, were not complex and likely would not require expert testimony on causation at all but for expert-report requirement).

We must be mindful that Anuvat merely has to be qualified to opine that Northwest EMS's breach of the standard of care—the dropping of a patient who was being carried on a stretcher by its emergency medical technicians—caused Guillory's injuries. TEX. CIV. PRAC. & REM. CODE §§ 74.351(r)(6), 74.403(a). Anuvat need not be a specialist in spinal injuries in particular to do so. But the majority also disregards that Anuvat was an attending physician at Interventional

13

Spine of Texas in 2016–17 and that his professional memberships include the North American Spine Society and International Spine Intervention Society.

The majority likewise discounts Anuvat's role as Guillory's treating physician. It reasons that he merely signed his report as "treating physician" without elaboration. But Anuvat's report was submitted on the letterhead of Interventional Spine of Texas, where Guillory was treated in 2016–17 and where Anuvat then worked.

In discounting the evidence of Anuvat's professional experience in treating spinal injuries and in treating this patient, the majority usurps the trial court's role. When, as here, a trial court rules based on disputed evidence, it does not abuse its discretion if some of the conflicting evidence supports its ruling. *See Samlowski*, 332 S.W.3d at 410. On this record, the trial court reasonably could have concluded that Anuvat was qualified to opine that Guillory's spinal injuries resulted from being dropped.

## CONCLUSION

The purpose of the Texas Medical Liability Act's expert-report requirement is to dispose of frivolous claims early in the litigation. To achieve this purpose, the Act sets a low bar for the sufficiency of expert reports. The majority erroneously elevates this low bar to a high hurdle. It does so in three ways; the majority:

(1) overcomplicates the standard of care for an uncomplicated claim;

14

(2) oversimplifies an expert's application of a well-accepted medical methodology for identifying the cause of a patient's injuries; and

(3) oversteps our review for abuse of discretion by discounting evidence the trial court was entitled to rely on in evaluating expert qualifications.

I therefore respectfully dissent.

Gordon Goodman
Justice

Panel consists of Justices Goodman, Landau, and Countiss.

Justice Goodman, dissenting.